IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION

| | |
|---|---|
| Ronnie Manns, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Court No. 07 C 50244 |
| v. ) | |
| ) | Hon. Frederick J. Kapala |
| ) | Judge Presiding |
| Illinois Department of Children and ) | Magistrate Judge P. Michael Mahoney |
| Family Services, *et al*. ) | |
| ) | |
| Defendants. ) | |

**STATE DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

NOW COMES the Defendant the Illinois Department of Children and Family Services (hereinafter "DCFS" or "Department"), by its attorney, LISA MADIGAN, Illinois Attorney General, and submits the following reply memorandum of law in support of its motion to dismiss Plaintiff's Complaint.

**Statement of Facts**

Plaintiff alleges that on March 3, 1997, DCFS placed four children under his guardianship. (Compl. at 2). On March 1, 2005, DCFS discontinued guardianship payments for one of the children, Katisha M., when DCFS was informed that the child had ran away from his home and was possibly living with her mother. (*Id.*) On March 29, 2007, Plaintiff received a notice of suspected child abuse and/or neglect regarding Katisha M. (*Id., see also* page 9 of Plaintiff's Complaint, Notification of Suspected Child Abuse And/Or Neglect Document, dated 03/29/2007). Also on March 29, 2007, the Winnebago County State's Attorney filed a petition to reinstate the wardship of Katisha M. (*Id., see also* page 10 of Plaintiff's Complaint, *In the Interest of Katisha M.*, 96 JA 285, Petition to Reinstate Wardship, dated March 29, 2007). A temporary custody order was entered placing Katisha M. in the guardianship of the DCFS

Guardianship Administrator with the discretion to place Katisha with a responsible relative or in traditional foster care. (*See* page 12 of Plaintiff's Complaint, *In the Interest of Katisha M.*, 96 JA 285, Temporary Custody Order, dated March 29, 2007). On April 9, 2007, the State's Attorney's petition to reinstate wardship was granted and Katisha M. was ordered to reside with Dolly Manns, Katisha M.'s maternal grandmother. (*Id., see also* page 11 of Plaintiff's Complaint, *In the Interest of Katisha M.*, 96 JA 285, Continuance Order, dated 4/9/2007).

On May 1, 2007, Plaintiff was notified by DCFS that he was indicated for child abuse or neglect. (Compl. at 1; *see also* page 13 of Plaintiff's Complaint, Investigation of Suspected Child Abuse And/Or Neglect – Indicated Perpetrator, dated May 1, 2007). Plaintiff filed an appeal of the indicated finding of child neglect on May 10, 2007. (*Id.* at 1; *see also* page 15 of Plaintiff's Complaint, Letter to Administrative Hearings Unit from Ron Manns, dated May 10, 2007). On July 26, 2007, DCFS voluntarily unfounded the report of child neglect against Plaintiff. (*Id.* at 1; *see also* page 17 of Plaintiff's Complaint, In the Matter of Ron Manns, DKT# 2007-E-00787, DCFS Order, dated July 26, 2007).

On August 3, 2007, Plaintiff sent a letter to DCFS requesting that Katisha M. be allowed to reside with him again. (*Id.* at 2; *see also* page 18 of Plaintiff's Complaint, Letter to Department of Children and Family Services from Ron Manns, dated August 3, 2007). DCFS initiated a Family Service Plan with regard to the failed guardianship of Katisha M. by Plaintiff on September 9, 2007, and a Comprehensive Multisystem Assessment with regard to Katisha M. was performed by Lutheran Social Services on September 18, 2007. (*Id.* at 2; *see also* pages 19-20 of Plaintiff's Complaint, DCFS Family Service Plan, dated 09/07/2007 and Comprehensive Multisystem Assessment – Short Form, dated 09/18/2007). On October 1, 2007, the Winnebago County juvenile court entered an order, *nunc pro tunc*, granting DCFS the discretion to place

Katisha M. with a responsible relative or traditional foster care. (*Id., see also* page 21 of Plaintiff's Complaint, *In the Interest of Katisha M.*, 96 JA 285, Continuance Order, dated October 1, 2007, *nunc pro tunc* 2007). Also on October 1, 2007, DCFS authorized a change of placement with regard to Katisha M. to place her back with Plaintiff. (*Id., see also* page 22 of Plaintiff's Complaint, Placement/Payment Authorization Form for Katisha M., dated October 1, 2007).

Plaintiff alleges that on November 18, 2007, he was evicted from his home and that he placed the minors with family until he could secure a new residence. (Compl. at 3). On December 1, 2007, Plaintiff established a new residence "but Lutheran Social Services [was] still blocking Katisha's return home." (*Id.*). In his complaint Plaintiff requests "the immediate return of Katisha M. to the only real home that she has ever known as well as damages in the amount of Two Million U.S. Dollars ($2,000,000.00)." (Compl. at 3). However, Plaintiff now admits that Katisha M. was returned to his home on or about December 10, 2007, and, therefore, Plaintiff is now seeking only monetary damages and that he is not seeking any "mandatory injunctive relief." (*See* Plaintiff's memorandum in support of denial of State Defendant's Motion to Dismiss at 1, attached as Exhibit 2 to Defendant Lutheran Social Services' Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint).

**Argument**

I. **THE ELEVENTH AMENDMENT BARS PLAINTIFF'S CLAIMS AGAINST THE ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES.**

Pursuant to Fed. R. Civ .P. 12(b)(1), a complaint should be dismissed if the court lacks jurisdiction over the subject matter of the suit. *Digiore v. State of Illinois*, 962 F.Supp. 1064, 1069 (N.D. Ill. 1997). The plaintiff bears the burden of establishing that the jurisdictional requirements have been met. *Kontos v. United States Dept. of Labor*, 826 F.2d 573, 576 (7th Cir.

1987).  When a defendant moves for dismissal pursuant to Fed. R. Civ .P. 12(b)(1), the plaintiff must support its allegations with competent proof of jurisdictional facts.  *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942).

     Federal district courts lack original subject matter jurisdiction over claims barred by the Eleventh Amendment.  *Estate of Porter by Nelson v. State of Illinois*, 36 F.3d 684, 691 (7th Cir. 1994).  This constitutional bar to federal jurisdiction applies to suits against any state, its departments or agencies, and its officials when "the state is the real substantial party in interest." *Frances J. v. Wright*, 19 F.3d 337, 342 (7th Cir. 1994)(internal citations omitted).  A decree operates against the state if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the government from acting or compelling it to act.  *Id.*

     Plaintiff seeks redress against Defendant DCFS in the form of monetary damages only.  Plaintiff admits that he is not seeking injunctive relief against DCFS.  (*See* Plaintiff's memorandum in support of denial of State Defendant's Motion to Dismiss at 1, attached as Exhibit 2 to Defendant Lutheran Social Services' Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint).  DCFS is a department of State government and, therefore, is an arm of the State as a matter of law.  20 ILCS 5/3 (legislative creation of DCFS); *see Kroll v. Board of Trustees of Univ. of Illinois*, 934 F.2d 904, 907 (7th Cir. 1991).  Because the Eleventh Amendment is an "explicit limitation on federal judicial power," *Edelman v. Jordan*, 415 U.S. 651, 678, 94 S.Ct. 1347, 1363 91974), a federal court is without jurisdiction to hear a claim against an unconsenting state absent congressional abrogation.  *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 242, 105 S.Ct. 3142, 3147 (1985).

The Supreme Court has recognized three situations in which there is a "surrender" of Eleventh Amendment sovereign immunity: (1) when a state waives its Eleventh Amendment sovereign immunity and consents to suit in federal court, *see Atascadero State Hospital v. Scanlon*, 473 U.S. at 238; (2) when Congress, acting pursuant to section 5 of the Fourteenth Amendment, abrogates a state's Eleventh Amendment sovereign immunity by expressing an unequivocal intent to do so, *see Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55-73, 116 S.Ct. 1114, 1123-32 (1996); and (3) when a state official is sued for prospective injunctive relief to end a continuing violation of federal law, *see id.* at 73, 116 S.Ct at 1132; *Ex parte Young*, 209 U.S. 123, 155-56, 28 S.Ct. 441, 452 (1908). None of these situations apply in this case.

Plaintiff brings this civil rights action against Defendant DCFS pursuant to 42 U.S.C. §1983 seeking redress in the form of monetary damages. (Compl. at 1). Congress did not abrogate the state's Eleventh Amendment immunity by enacting 42 U.S.C. §1983. *See Quern v. Jordan*, 440 U.S. 332, 341 (1979) (section 1983 does not "override the traditional sovereign immunity of the States"). In addition, the Supreme Court has held that neither states nor state officials acting in their official capacities are "persons" within the meaning of 42 U.S.C. §1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64 ((1989)(a lawsuit under 42 U.S.C. §1983 against state officials constitutes a suit against the State itself and neither a State nor its officials acting in their official capacities are "persons" under section 1983 for purposes of damage awards). Therefore, Plaintiff's action pursuant §1983 against DCFS is barred by the Eleventh Amendment.

Plaintiff argues that the United States Supreme Court determined in *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976), that Congress "has the power to abrogate the Eleventh Amendment sovereign immunity of the states, if it is done pursuant to its Fourteenth Amendment power to

5

enforce upon the states the guarantees of the Fourteenth Amendment." (*See* Plaintiff's memorandum in support of denial of State Defendant's Motion to Dismiss at 2, attached as Exhibit 2 to Defendant Lutheran Social Services' Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint). While it is true that in *Fitzpatrick v. Bitzer* the Supreme Court allowed the relief sought against the State of Connecticut for, *inter alia*, damages for past acts of Connecticut state officials in violation of Title VII of the Civil Rights Act of 1964, *Fitzpatrick v. Bitzer* does not support the position of Plaintiff here. The 1972 Amendments to Title VII of the Civil Rights Act of 1964, explicitly authorized "federal courts to award money damages in favor of a private individual against a state government found to have subjected that person to employment discrimination on the basis of 'race, color, religion, sex, or national origin.'" *Fitzpatrick v. Bitzer*, 427 U.S. at 447. The threshold fact of congressional authorization for a citizen to sue his state employer, which was present in *Fitzpatrick*, is not present in this case.

Plaintiff does not allege that he was discriminated against while employed by the State of Illinois or while seeking employment with the State. While Plaintiff may be the guardian of Katisha M. and a foster parent, he is not an employee of the State. *See Nichol v. Stass*, 192 Ill.2d 233, 239 735 N.E.2d 582, 587 (Ill. 2000)(holding that foster parents are independent contractors and not employees or agents of the state). Nor does Plaintiff's status as a foster parent create a liberty interest in the child he is fostering, or an expectancy or entitlement to foster payments. *Procopio v. Johnson*, 994 F.2d 325, 329 (7th Cir. 1993). *Cf. Johnson v. Burnett*, 182 Ill.App.3d 574, 579 (1989)(describing a foster parent's role in Illinois as "that of a temporary way [sic] station on the road of a child's life," not a family for whom a future permanent situation is guaranteed). Moreover, Plaintiff does not have a property interest of the kind protected by the Fourteenth Amendment in the foster care benefits paid on behalf of the children under his care.

*Dupuy v. Samuels*, 397 F.3d 493, 515 (7th Cir. 2005).  DCFS' payments to foster parents are not intended as income; "foster care payments simply are reimbursement for caring for the foster child – removing the child relieves foster parents from providing that service and meeting that expense."  *Id.* at 502 (internal citation omitted).  Simply put, there is nothing in Plaintiff's complaint that would support the denial of the Department's motion to dismiss based on its Eleventh Amendment immunity.

## II.    THE *ROOKER-FELDMAN* DOCTRINE AND THE DOCTRINE OF ISSUE PRECLUSION BAR PLAINTIFF'S ACTION AGAINST DCFS.

Plaintiff argues that the doctrine of issue preclusion is not relevant because he "is not attempting to litigate matters previously considered by the state court."  (Plaintiff's memorandum in support of denial of State Defendant's Motion to Dismiss at 2, attached as Exhibit 2 to Defendant Lutheran Social Services' Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint).  Yet, a fair reading of Plaintiff's complaint demonstrates that he is dissatisfied with the conduct and outcome of state court proceedings and the administrative process.  (*See* Compl. at 1-21).  Plaintiff fails to state anything in his responsive pleading that would dispel the assumption that he is attacking the state court and administrative proceedings.  Therefore, to the extent that Plaintiff is attempting to litigate matters previously considered by the state court, the doctrine of issue preclusion bars the federal court from reconsidering the issue.  *See Jensen v. Foley,* 295 F.3d 745, 748 (7th Cir. 2002) (holding that the federal court was barred by the doctrine of issue preclusion from reconsidering the state court issue in the federal lawsuit).  Federal courts must give state court judgments the same preclusion as the court in that state would.  *Id.*  Issue preclusion applies in Illinois when the same controlling issue of fact material to

the determination is at stake in two consecutive cases, and that issue was adjudicated against a party in the first suit. *Id.* at 748-49.

Federal courts do not have subject matter jurisdiction over challenges to state court decisions, in particular cases arising out of judicial proceedings, even if those challenges allege that the state court's action was unconstitutional. *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486-487 (1983). The *Rooker-Feldman* doctrine bars cases brought in federal court complaining about injuries caused by state court judgments rendered before the start of the federal court proceedings and which ask the federal court to review and/or reject those judgments. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). The *Rooker-Feldman* doctrine limits federal court jurisdiction by dictating that federal courts do not have subject matter jurisdiction to review decisions of state courts. *Levin v. ARDC, 74 F.3d* 763, 766 (7th Cir. 1996).

Plaintiff argues that the *Rooker-Feldman* doctrine is inapplicable to this lawsuit because this case "is not a refilling [sic] of a previously dismissed case and there has been no other lawsuit filed by this plaintiff in any state or federal court in the United States." (Plaintiff's memorandum in support of denial of State Defendant's Motion to Dismiss at 2, attached as Exhibit 2 to Defendant Lutheran Social Services' Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint). Plaintiff misses the point. A federal court runs afoul of the *Rooker-Feldman* doctrine when it is called upon to consider a claim that although was not argued in the state court, was "inextricably intertwined" with the state court's judgment. *Wright v. Tackett*, 39 F.3d 155, 157 (7th Cir. 1994).

If Plaintiff believes that DCFS violated his constitutional rights in the state proceedings his only avenue to appeal those decisions is through the state courts and then to the Supreme

8

Court. *Young v. Murphy*, 90 F.3d 1225, 1230 (7th Cir. 1996). It is settled that a plaintiff may not seek a reversal of a state court judgment simply by casting his complaint in the form of a civil rights action. *Riter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993).

The fact that Plaintiff is seeking damages against DCFS does not affect the conclusion that the *Rooker-Feldman* doctrine bars jurisdiction over this case. *See Wright v. Tackett*, 39 F.3d 155, 156 (7th Cir. 1994), *cert. denied*, 513 U.S. 1150 (1995) (fact that plaintiff was seeking damages did not prevent court from denying jurisdiction based on the *Rooker-Feldman* doctrine). To the extent that the adjudication of the allegations in Plaintiff's complaint requires this Court to review, reconsider, or become entangled in state court decisions, the *Rooker-Feldman* doctrine compels the dismissal of Plaintiff's complaint for lack of subject matter jurisdiction.

## Conclusion

WHEREFORE, for the foregoing reasons and for the reasons stated in State Defendants' motion to dismiss and supporting memorandum of law, the Illinois Department of Children and Family services respectfully requests that this Honorable Court grant their motion to dismiss Plaintiff's complaint pursuant to Fed. R. Civ .P. 12(b)(1).

    Respectfully submitted,

    LISA MADIGAN, Illinois Attorney General

By:    s/James C. Stevens, Jr.
    James C. Stevens, Jr.  06191415
    Assistant Attorney General
    Attorney for State Defendant DCFS
    100 W. Randolph St., Suite 11-200
    Chicago, IL 60601
    (312) 814-6788
    Fax # (312) 814-6885
    jim.stevens@illinois.gov